DOROTHY EVANS, Plaintiff-Appellant, v. GURNEE INNS, INC., *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—93—4083

Opinion filed December 30, 1994.—Rehearing denied February 3, 1995.

Harry S. Weber, of Chicago, for appellant.

Paul W. Grauer & Associates, of Schaumburg (Paul W. Grauer and Randall W. Graff, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Dorothy Evans, brought an action to recover damages for an alleged wrongful termination by her employer. During a bench trial and following the close of plaintiff's case, the trial court granted defendant's motion for a finding on the evidence. Plaintiff brings this timely appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

We are asked to decide whether a former employee may base a wrongful termination claim upon oral statements made by the former employer and, if so, whether the plaintiff in this case has potentially made out such a claim. We find that the terms of an at-will employment agreement may be modified by an employer's oral promises, but that the oral statements at issue in this case do not rise to a level necessary to create a *prima facie* claim of wrongful termination.

Plaintiff was employed as the executive housekeeper for the defendants. On August 21, 1991, she filed a wrongful discharge complaint in the law division. In the complaint, she alleged that she had been terminated by Debbie Frank, a general manager for the defendant Holiday Inn-Gurnee, for no apparent reason and without warning. She claimed that the termination was against the defendants' employment policy of first giving employees three prior verbal or written warnings.

As noted, the cause was tried in a bench trial. Following opening statements by the plaintiff, defendants' counsel made a motion to dismiss the case. He argued that the plaintiff had conceded in her opening statement that there were no written policies which would have precluded the defendants from terminating the plaintiff without warning, and that without a written policy the plaintiff could not make her case as a matter of law. The trial court declined to rule on the motion, allowing the plaintiff to proceed with the case.

Grace Garza, a maid employed at the Holiday Inn-Gurnee, testified first for the plaintiff. She stated that on July 6, 1991, Debbie Frank came from the plaintiff's office and announced to the staff that the plaintiff had just been terminated. According to Garza, a woman named Patty Siegel replaced the plaintiff. Defendants did not cross-examine Garza.

The plaintiff herself testified next. She stated that she had begun working for the Holiday Inn in May of 1981 as a maid. Several months after she began working the general manager, a man named Mr. Hedden, called all the employees of the hotel together in the ballroom. According to the plaintiff, Hedden said that he represented the Holiday Inn and that he did not want anyone to be ill-treated.

With regard to what Hedden said about employee discipline, the plaintiff testified:

> "He wanted the company to run good. If we did something we wasn't supposed to do, first we were talked to and then we were written up. And we were allowed three times whether it was written or told to us but we had three times in a year to mess up and then we would be terminated. And then the other thing would be that if we came in drunk or we were on dope or we fought, stole, then it was instant termination."

Plaintiff testified that she relied upon Hedden's statements and that this three-warnings policy was followed during the period of time she worked there.

With regard to the day she was terminated, plaintiff testified that Debbie Frank, an assistant to a man named Mr. Carre, told her that she was a good worker and that she got along well with the customers and staff. However, according to the plaintiff, Frank also told her that she was terminated. Frank apparently did so because Carre was unhappy with her.

Plaintiff introduced into evidence a document which she testified was a written warning used by the Holiday Inn when employees were disciplined. She testified that she had received "a couple of them" during the 10 years she had been employed there. She testified "[w]hoever it was got three of these or a combination if she had been talked to. It had to amount to three times." She also testified that she lost approximately 10 months of wages after she was terminated from the Holiday Inn. When the defendants declined cross-examination, the plaintiff rested her case.

At this point in the trial, counsel for the defendants renewed his motion for a finding, which the trial court granted. The court stated that Illinois recognized at-will employment as the general rule and that the plaintiff could recover for wrongful termination only if she had come forward with an enforceable contractual modification of her at-will employment. The court stated that all the cases finding a modification of an at-will employment involved a written policy, and that the court had allowed the plaintiff to put on evidence only because plaintiff's case was one of first impression. The court then stated, "You have made your record. And I am ruling that you have not presented sufficient evidence to take this matter outside the policy of the state of Illinois."

■ We begin our analysis by reviewing section 2—1110 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1110 (West 1992)). This section of the Code provides that in all cases tried without a jury, a defendant may, at the close of the plaintiff's case, move for a

finding or judgment. In ruling on the motion, the court must apply a two-part analysis, first determining as a matter of law whether a plaintiff has presented a *prima facie* case and entering a judgment for the defendant if the plaintiff has failed to do so. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) If the court determines that the plaintiff has presented a *prima facie* case, the court must then consider the evidence, including any evidence favorable to the defendant, passing on the weight and quality of the evidence. (*Dyduch*, 221 Ill. App. 3d at 477; *Kokinis*, 81 Ill. 2d at 155.) If the court determines that the evidence warrants a finding in favor of the defendant, it must grant the defendant's motion.

■ When the trial court passes on the weight of the evidence under section 2—1110, we review the court's determination under the deferential "against the manifest weight of the evidence" standard. (*Dyduch*, 221 Ill. App. 3d at 477.) In this case, however, the trial court determined only that the plaintiff had failed to make out a *prima facie* case as a matter of law. We therefore consider the trial court's decision under a *de novo* standard of review. See *Kokinis*, 81 Ill. 2d at 154-55 (in making a section 2—1110 ruling, "the trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case"); *Illinois Country Club v. Property Tax Appeal Board* (1994), 263 Ill. App. 3d 410, 416-17, 635 N.E.2d 1347 ("When a question of law is presented below, the reviewing court considers the question *de novo*").

■ It is well established in Illinois that an employer-employee relationship without a fixed duration is generally terminable at will by either party. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 189, 384 N.E.2d 353.) The at-will rule is a rule of construction only, however, creating a mere rebuttable presumption that a hiring without a fixed term is at will. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314.) That presumption can be overcome by demonstrating that the parties contracted otherwise. (*Duldulao*, 115 Ill. 2d at 489.) An employee handbook or other "policy statement" creates enforceable contractual rights provided the following requirements are each satisfied: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer was made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Duldulao*, 115 Ill. 2d at 490.

■ As the plaintiff correctly argues, the court in *Duldulao* did not

require that an employee "policy statement" be in writing to overcome the at-will presumption. We know of no case setting out such a substantive requirement.[1] We therefore conclude that the trial court improperly entered judgment upon the grounds that the plaintiff did not produce a written policy statement.

Normally, when the trial court erroneously enters judgment under section 2—1110, we remand the case in order to allow the defendant the opportunity to put on evidence. (See Supreme Court Rule 366(b)(3)(iii) (134 Ill. 2d R. 366(b)(3)(iii)).) Our review of the record in this case, however, indicates that the trial court's decision to enter judgment was ultimately the correct one. As a reviewing court we have the authority to affirm the judgment of the circuit court on any ground supported by the record. *Cohn*, 233 Ill. App. 3d at 843.

The plaintiff claims that the oral statements of Mr. Hedden in the Holiday Inn's ballroom in May of 1981 met the first and second requirements of *Duldulao* and that the plaintiff's continued employment at the Holiday Inn met the third requirement. Her counsel during oral argument stressed the fact that she possessed a subjective belief that her status as an at-will employee had been changed by Hedden's statements. We note, however, that the requirements set out by the supreme court in *Duldulao* are evaluated under an objective, not subjective, standard. (*Boll v. Hyatt Corp.* (1993), 243 Ill. App. 3d 1005, 1009, 614 N.E.2d 71.) Defendant argues that the plaintiff's testimony fails to meet the first of the *Duldulao* requirements because Hedden's statements did not contain the type of language which would create a reasonable belief that the plaintiff was entitled, as a contractual matter, to specific disciplinary procedures before being terminated. We must agree.

In this case the only evidence offered to support the alleged three-offense termination policy was the plaintiff's own general recollection that employees "were allowed three times *** that we had three times in a year to mess up, and we would be terminated." This, however, falls short of a specific enforceable promise by Hedden that employees would never be terminated in the absence of three warnings. Neither did the content of plaintiff's testimony set out the

---

[1]On appeal the defendants have raised the Statute of Frauds (also known as the Frauds Act) (740 ILCS 80/0.01 *et seq.* (West 1992)), arguing that we should apply it as a procedural bar to plaintiff's claim. (See, *e.g.*, *Cohn v. Checker Motors Corp.* (1992), 233 Ill. App. 3d 839, 599 N.E.2d 1112; *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281.) The defendants did not plead or raise the Frauds Act in the trial court, however, and they cannot now, for the first time, properly do so. *Harvey v. McKinney* (1991), 221 Ill. App. 3d 140, 581 N.E.2d 786.

type of formal procedures that would reasonably lead to the conclusion that the terms of plaintiff's at-will employment had been modified. See *Torres v. Amoco Corp.* (1989), 186 Ill. App. 3d 135, 139, 542 N.E.2d 154; *Koch*, 175 Ill. App. 3d at 252.

It is instructive to compare the type of language at issue in *Duldulao* with the language at issue in this case. In *Duldulao* the court emphasized the type of mandatory statements which could contractually modify an at-will employment:

"The amended handbook states that '[a]t the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital *cannot occur* without proper notice and investigation.' *** It states that permanent employees '*are never* dismissed without prior written admonitions and/or an investigation that has been properly documented,' *** and that 'three warning notices within a twelve month-period *are required* before an employee is dismissed, except in case of immediate dismissal.'" (Emphasis in original.) *Duldulao*, 115 Ill. 2d at 490-91.

Plaintiff has conceded that she was hired as an at-will employee. We find that Hedden's alleged statements to the Holiday Inn employees in 1981 did not contain promises "clear enough" that an employee would "reasonably believe" a contractual offer had been made modifying her at-will employment. (See *Duldulao*, 115 Ill. 2d at 490.) For this reason, the trial court's entry of judgment at the close of the plaintiff's case was correct.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.