

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 11, 2024

Mr. Tristan Marquez
Ector County Auditor
1010 East 8th Street, Room 121
Odessa, Texas 79761

**Opinion No. KP-0468**

Re: The legality of certain actions of the Ector County Utility District Board of Directors (RQ-0524-KP)

Dear Mr. Marquez:

You ask several questions related to the Ector County Utility District Board of Directors ("Board").[1] Your questions concern the legality of a particular Board meeting, a vacancy on the Board, applications for a place on the ballot, filling vacancies on the Board, alleged misconduct by the Board, and the role of the Ector County Commissioners Court ("Commissioners Court") in the appointment or removal of Board directors. Request Letter at 1–5. A brief submitted to our office by the Ector County Utility District ("District") in response to your request demonstrates significant disagreement about some of the underlying facts.[2] This office does not resolve disputed questions of fact or determine whether a person has committed a criminal offense or misconduct through the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0455 (2024) at 1. We therefore address only general legal issues that your questions raise without determining the underlying facts involved or whether the Board has engaged in misconduct or committed an offense. We begin with some background information about the District.

**Background**

You tell us that the District was originally "created pursuant to Chapter 51 of the Texas Water Code and pursuant to the provisions of Section 59 of Article XVI of the Constitution of Texas" but "later adopted orders to be governed under Chapter 54" of the Water Code. Request Letter at 3; Supplemental Email at 1. Chapter 54 is titled "Municipal Utility Districts." TEX. WATER CODE §§ 54.001–.813. In addition to chapter 54, chapter 49 of the Water Code governs

---

[1]*See* Letter from Mr. Tristan Marquez, Ector Cnty. Auditor, to Off. of the Att'y Gen. at 1–5 (rec'd Dec. 15, 2023), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2023/RQ0524KP.pdf ("Request Letter"); Email from Mr. Tristan Marquez, Ector Cnty. Auditor, to Op. Comm. at 1 (Feb. 8, 2024) (clarifying information in Request Letter) (on file with the Op. Comm.) ("Supplemental Email").

[2]*See* Brief from Mr. Michael Parsons, The Carlton L. Firm, P.L.L.C., to Honorable Ken Paxton, Tex. Att'y Gen. at 1–16 (Jan. 17, 2024) (on file with the Op. Comm.).

the administration of a general-law municipal utility district, like the District. *See id.* §§ 49.001(a)(1) (defining "[d]istrict" to include any district created by authority of section 59, article XVI), 49.002(a) (providing that, with certain exceptions, chapter 49 "applies to all general and special law districts to the extent that the provisions of this chapter do not directly conflict with a provision in any other chapter of this code or any Act creating or affecting a special law district"). The Board is composed of five directors elected by voters of and serving as the governing body of the District. *See* Request Letter at 1–3 (referring to Board positions A through E and describing the November 2022 election); *see also* TEX. WATER CODE §§ 54.101 (providing a municipal utility district "shall be governed by a board of five directors"), 54.022(a) (providing permanent directors are elected). With that background, we consider your questions in turn.

### Open Meetings Act

Your first set of questions concern the Open Meetings Act, which is set out in chapter 551 of the Government Code. *See* Request Letter at 1; TEX. GOV'T CODE §§ 551.001–.146. You ask whether prohibiting some members of the public from entering a public meeting "due to [the room's] occupancy limits" violates section 551.002 or constitutes an offense under section 551.144. Request Letter at 1; *see* TEX. GOV'T CODE §§ 551.002 ("Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter."), 551.144 (establishing criminal sanctions for certain conduct that violates openness requirements). These questions raise issues implicated in a matter currently before a court. *See Story v. Azaiez*, No. 1:22-CV-448-DAE (W.D. Tex. July 26, 2023) (denying in part motions to dismiss and finding that "Plaintiffs plausibly state a claim that Defendants violated TOMA with respect to the limited public seating rule"). It is a long-standing policy of this office to decline to answer, through the opinion process, a question that is the subject of pending litigation. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0118 (2016) at 2–3. We therefore decline to address these questions.

### Vacancy in Former Board President Position

You next ask about a vacancy in the Board president position. Request Letter at 1–2; *see also* TEX. WATER CODE § 49.054 (addressing officers, including the position of board president). You explain that a former Board president "held [his] position . . . for 16 years until it was found that he was convicted of four felony counts of dealing illegal narcotics in the 1970's." Request Letter at 1. You say that when this was discovered the district attorney requested his immediate resignation or proof that he had been pardoned. *Id.* You tell us the former Board president ultimately resigned. *Id.* You ask whether the "preexistence" of the former Board president's "felony convictions result[ed] in an automatic vacancy" under Texas Local Government Code section 87.031. *Id.* at 1–2; *see* TEX. LOC. GOV'T CODE § 87.031(a) (providing "[t]he conviction of a county officer by a petit jury for any felony or for a misdemeanor involving official misconduct operates as an immediate removal from office of that officer"). Because the person who is the subject of your question resigned, we believe this question is moot and we do not address it. *See, e.g.*, Tex. Att'y Gen. Op. Nos. KP-0172 (2017) at 2, GA-1022 (2013) at 3 (both declining to address moot questions).

**Application for a Place on the Ballot**

You then ask about applications for a place on the ballot. Request Letter at 2. You seek to understand whether a person who is elected to office after filing a deficient application for a place on the ballot unlawfully holds that office. *Id.* (asking whether "improper filing of candidate forms . . . result[s] in an illegitimate claim to office"). A candidate for a position on the board of directors of a water district must file an application for a place on the ballot. *See* TEX. WATER CODE § 49.101 (providing that "[a]ll elections shall be generally conducted in accordance with the Election Code except as otherwise provided for by" the Water Code); TEX. ELEC. CODE § 144.003(a) (requiring candidates for office of a political subdivision other than county or city to file an application). State law specifies the content of a candidate application. *See, e.g.*, TEX. ELEC. CODE § 141.031 (setting out general requirements for an application). Yet, the Legislature has prescribed a period after which an application for a place on the ballot is no longer subject to challenge as to form, content, and procedure. *Id.* § 141.034(a). Specifically, "[a]n application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure *after the 50th day before the date of the election* for which the application is made." *Id.* (emphasis added). Once that period has passed, any form, content, and procedural insufficiencies in a candidate's application are moot.[3] *See, e.g.*, *Law v. Johnson*, 826 S.W.2d 794, 796–97 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (holding that the issue of whether a candidate could appear on the ballot because of a failure to sign the application was moot where absentee voting had begun); Tex. Att'y Gen. LO-88-119 (1988) at 2 (concluding that "once the voters have cast ballots for a candidate, the insufficiency of the candidate's application is mooted"). Thus, a court would likely conclude that a person who is elected to office does not unlawfully hold the office as the result of filing a deficient application for a place on the ballot.

**Filling Vacancies under Subsection 49.105(a) of the Water Code**

Your next set of inquiries relate to filling vacancies under Water Code section 49.105. Request Letter at 2. Section 49.105 provides as follows:

> (a) Except as otherwise provided in this code, a vacancy on the board and in other offices shall be filled for the unexpired term by appointment of the board not later than the 60th day after the date the vacancy occurs.

> (b) If the board has not filled a vacancy by appointment before the 61st day after the date the vacancy occurs, a petition, signed by more than 10 percent of the registered voters of the district, requesting the

---

[3]This stands in contrast to issues of eligibility to hold office, for which the Legislature has provided remedies beyond this time period. *See, e.g.*, TEX. ELEC. CODE § 145.003(d) (authorizing the presiding officer of a final canvassing authority to declare a candidate ineligible after the polls close on election day and, with limited exceptions, before a certificate of election is issued); *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 32 (Tex. 2020) (explaining that seeking a declaration of ineligibility under chapter 145 and lodging a ballot-application challenge under chapter 141 are distinct procedural tools).

board to fill the vacancy by appointment may be presented to the board.

(c) If the number of directors is reduced to fewer than a majority or if a vacancy continues beyond the 90th day after the date the vacancy occurs, the vacancy or vacancies may be filled by appointment by the commission[4] if the district is required by Section 49.181 to obtain commission approval of its bonds or by the county commissioners court if the district was created by the county commissioners court, regardless of whether a petition has been presented to the board under Subsection (b). An appointed director shall serve for the unexpired term of the director he or she is replacing.

(d) In the event of a failure to elect one or more members of the board of a district resulting from the absence of, or failure to vote by, the qualified voters in an election held by the district, the current members of the board or temporary board holding the positions not filled at such election shall be deemed to have been elected and shall serve an additional term of office, or, in the case of a temporary board member deemed elected under this subsection, the initial term of office.

TEX. WATER CODE § 49.105 (footnote added).

You ask whether the Board is disqualified from appointing an individual to fill a vacancy beyond the sixty-day timeframe prescribed in subsection 49.105(a) and whether the Commissioners Court has the "sole authority" to appoint an individual to fill a vacancy beyond the ninetieth day after a vacancy occurs. Request Letter at 2. We answer both questions in the negative. By its express terms, subsection 49.105(b) contemplates a board of directors filling a vacancy by appointment beyond the sixty-day timeframe when presented with a qualifying petition by district voters requesting the appointment. TEX. WATER CODE § 49.105(b). And subsection 49.105(c) expressly provides that if a vacancy continues beyond the ninetieth day after the date the vacancy occurs, the vacancy may, in certain circumstances, be filled by appointment by either a commissioners court *or* the Texas Commission on Environmental Quality ("TCEQ"). *Id.* § 49.105(c); *see* 30 TEX. ADMIN. CODE § 293.33 (2000) (Tex. Comm'n on Env. Quality, Commission Appointment of Directors to Fill Vacancies).

---

[4]For purposes of chapter 49, the term "commission" refers to the Texas Commission on Environmental Quality as the successor agency of the Texas Natural Resource Conservation Commission. TEX. WATER CODE § 49.001(a)(2) (defining "[c]ommission" to mean the Texas Natural Resource Conservation Commission); *see* Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01(a)(1), (b), 2001 Tex. Gen. Laws 1933, 1985 (changing the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality and providing that a reference to the Texas Natural Resource Conservation Commission in law is a reference to the Texas Commission on Environmental Quality).

You also ask whether an individual legally holds office when the individual is appointed by the Board beyond the sixty-day time frame for filling vacancies prescribed in subsection 49.105(a). Request Letter at 3 (asking if the Board makes an appointment "after the 60th day, in direct contradiction with the expressed powers of Texas Water Code [section] 49.105(a), does this mean that the director that was appointed is not legally holding office"). We assume you to ask about a situation where the Board makes an appointment beyond the sixty-day timeframe without having received a petition from the registered voters of the District.

Subsection 49.105(a) provides that a vacancy for an unexpired term "shall" be filled by the board of directors not later than the sixtieth day after the date the vacancy occurs. TEX. WATER CODE § 49.105(a). While the word "shall" is generally construed as mandatory, it is sometimes held to be directory.[5] *See AC Interests, L.P. v. Tex. Comm'n on Env't Quality*, 543 S.W.3d 703, 709 (Tex. 2018). In construing the term, a court will first consider whether the statute contains a noncompliance penalty. *Id.* If a statute "requires that an act be performed within a certain time without any words restraining the act's performance after that time, the timing provision is usually directory." *Id.* (quoting *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex. 2001)). Yet, the legislative intent revealed by the language enacted remains the preeminent consideration in determining whether a timing provision is mandatory or directory. *Id.* Consideration should be given to "the entire act, its nature and object, and the consequences that would follow from each construction." *Wilkins*, 47 S.W.3d at 494. With these principles in mind, we examine section 49.105.

Section 49.105 first provides that a vacancy on a board "shall be filled for the unexpired term by appointment of the board not later than the 60th day after the date the vacancy occurs." TEX. WATER CODE § 49.105(a). Consequences potentially flow from a board's failure to timely fill a vacancy. If the board does not act unilaterally to fill the vacancy by appointment in the sixty-day time frame, the statute authorizes the registered voters of the district to petition the board to fill the vacancy by appointment. *Id.* § 49.105(b). And if a vacancy continues beyond the ninetieth day after the date the vacancy occurs it may be filled by appointment by the TCEQ, in certain instances, "or by the county commissioners court if the district was created by the county commissioners court[.]" *Id.* § 49.105(c). However, a court is unlikely to construe the mere possibility that the TCEQ or a commissioners court will appoint a person to fill the vacancy as a "noncompliance penalty" since this possibility alone does nothing to restrain a board from filling the vacancy after the sixty-day time frame. *See AC Interests*, 543 S.W.3d at 709.

This conclusion is supported by the discretionary language in section 49.105, which on its face does not mandate that the TCEQ or commissioners court act to fill a vacancy after the ninety-day time frame. TEX. WATER CODE § 49.105(c) (providing TCEQ or a commissioners court "may" fill a vacancy by appointment); *see also* TEX. GOV'T CODE § 311.016(1) (providing that "[m]ay"

---

[5]For instance, both courts and this office have concluded timing provisions related to appointing or electing individuals to serve on the governing body of a public entity were directory in nature, even though the relevant statute used the term "shall." *See, e.g.*, *Burton v. Ferrill*, 531 S.W.2d 197, 199 (Tex. App.—Eastland 1975, writ dism'd) (relating to the appointment of temporary directors for a county hospital district); Tex. Att'y Gen. Op. No. GA-0621 (2008) at 4–5 (relating to the appointment of board members for a county airport authority); *see also* Tex. Att'y Gen. Op. No. KP-0102 (2016) at 2 n.2 (discussing filling a vacancy in a trustee position on an independent school district board).

generally "creates discretionary authority or grants permission or a power"). Moreover, the TCEQ and commissioners court may not in all instances be authorized to make an appointment. *See* TEX. WATER CODE § 49.105(c) (specifying that the TCEQ may appoint only "if the district is required by Section 49.181 to obtain commission approval of its bonds" and that the county commissioners may appoint only "if the district was created by the county commissioners court"). This further suggests that subsection 49.105(c) offers optional methods of filling a vacancy in case the Legislature's primary directive to the board is not followed. Though a board appointment could potentially be foreclosed by action of the TCEQ or a commissioners court, section 49.105 does not contain any express language depriving the board of the ability to unilaterally appoint an individual to fill a vacancy after the sixty-day time frame.

The evident purpose of section 49.105 is to ensure a vacancy for an unexpired term is filled in a timely manner. In that way, the section serves to promote prompt, orderly, and proper business conduct, suggesting subsection (a) is directory in nature. *See AC Interests*, 543 S.W.3d at 708. If we construe subsection (a) as mandatory, a board is prohibited from taking unilateral action to fill a vacancy after the sixty-day time frame. Further, if TCEQ, a commissioners court, and/or the voters fail or are unable to act, there is no way to fill the vacancy. On the other hand, if we construe subsection (a) as directory, it accomplishes the purpose of the section. For these reasons, a court would likely conclude that subsection (a) is directory, and where the voters, TCEQ, or the commissioners court do not act, a unilateral appointment by a board to fill a vacancy for an unexpired term after the sixty-day timeframe is valid.[6]

### Removing Directors of the Board

Your final set of questions ask about the removal of Board directors for alleged misconduct. Request Letter at 4–5. You specially ask about removal pursuant to Local Government Code subsection 178.053(a) and Civil Practice and Remedies Code subsections 66.001(1) and (2). *Id.* We limit our discussion to those provisions.

Chapter 178, Local Government Code, governs the removal of special district board members. TEX. LOC. GOV'T CODE §§ 178.001–.056. Subchapter B of chapter 178 is titled "Removal of *Appointed* Board Members for Misconduct." *Id.* §§ 178.051–.056 (emphasis added). It applies "to any type of special district[7] with a board that is *wholly or partly appointed*, including . . . municipal utility districts[.]" *Id.* § 178.051(39) (footnote and emphasis added). Subsection 178.053(a) authorizes a commissioners court to remove for misconduct the director of a municipal utility district if, among other things, the director "was *appointed* by the commissioners court." *Id.* § 178.053(a)(2) (emphasis added); *see also id.* § 178.055(b) (addressing removal of a director of a special district *appointed* by more than one commissioners court). As previously stated, we understand the directors of the Board to be elected. *See supra* at 2. To the extent that is the case, a

---

[6]Given our conclusions regarding a candidate's ballot application and Water Code section 49.105, we do not reach your questions regarding appointment by the Commissioners Court. *See* Request Letter at 3.

[7]The term "[s]pecial district" is defined to mean "a political subdivision of this state with a limited geographic area created by local law or under general law for a special purpose" and "[b]oard" is defined to mean "the governing body of a special district." TEX. LOC. GOV'T CODE § 178.001(1), (4).

court would likely conclude Local Government Code subsection 178.053(a) does not apply to the District.

Chapter 66 of the Civil Practice and Remedies Code authorizes an action in quo warranto in a handful of circumstances, including when a person unlawfully holds an office or "a public officer does an act or allows an act that by law causes a forfeiture of his office[.]" TEX. CIV. PRAC. & REM. CODE § 66.001(1), (2); *see also Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 310 (Tex. App.—Texarkana 2006, pet. denied) ("A writ of quo warranto is an extraordinary remedy available to decide issues concerning the proper person entitled to a public office and exercise its functions."). If the director of a municipal utility district is believed to unlawfully hold or to have forfeited his or her office, "the attorney general or the county or district attorney of the proper county" may petition a court for leave to file an information in the nature of quo warranto. TEX. CIV. PRAC. & REM. CODE § 66.002(a). If a person against whom an information is filed is found guilty, "the court . . . shall enter judgment removing the person from the office . . . ." *Id.* § 66.003(1).

Chapter 66 of the Civil Practice and Remedies Code imposes no factual "threshold" which mandates an action in the nature of quo warranto. *See id.* §§ 66.001–.003; Request Letter at 5 (asking if a "threshold [has] been met" to initiate a quo warranto action). It instead lays out the grounds when the remedy is "available" and gives the Attorney General or a district or county attorney discretion as to whether to petition the court. TEX. CIV. PRAC. & REM. CODE §§ 66.001 (making "[a]n action in the nature of quo warranto . . . available"), 66.002(a) (providing "the attorney general or the county or district attorney of the proper county may petition the" court); *see also* Tex. Att'y Gen. Op. No. KP-0430 (2023) at 3 (providing we do not "in an Attorney General opinion presume to advise [local] prosecutors on the proper exercise of their discretion").

**S U M M A R Y**

Election Code subsection 141.034(a) prohibits a challenge to an application for a place on the ballot as to form, content, and procedure after the fiftieth day before the date of the election for which the application is made. Once that period has passed, any form, content, and procedural insufficiencies in a candidate's application are moot. Thus, a court would likely conclude a person who is elected to office does not unlawfully hold the office as the result of filing a deficient application for a place on the ballot.

Water Code subsection 49.105(a) provides that a vacancy on the board of certain water districts "shall be filled for the unexpired term by appointment of the board not later than the 60th day after the date the vacancy occurs." A court would likely conclude the term "shall" in subsection 49.105(a) is directory in nature.

Local Government Code subsection 178.053(a) authorizes a commissioners court to remove for misconduct the director of a municipal utility district if, among other things, directors of the district are wholly or partially appointed by the commissioners court. Subsection 178.053(a) does not, therefore, apply to a municipal utility district whose directors are elected rather than appointed.

Section 66.001 of the Civil Practice and Remedies Code authorizes an action in quo warranto in certain instances, including when a person unlawfully holds an office or a public officer forfeits his or her office. It imposes no factual threshold which mandates an action in the nature of quo warranto, but instead lays out the grounds for when the remedy is "available" and gives the Attorney General or a district or county attorney the discretion whether to petition the court.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee